IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ADKINS,

    Petitioner,                             No. CIV S-05-1501 JAM CHS P

    vs.

TOM L. CAREY, et al.,

    Respondents.        FINDINGS AND RECOMMENDATIONS

                          /

## I. INTRODUCTION

Petitioner Benjamin Adkins is a state prisoner proceeding pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254. Petitioner is currently serving a sentence of 15 years to life following his 1981 conviction for second degree murder in the San Francisco County Superior Court. Petitioner challenges the execution of his sentence, and specifically, the decision of the Board of Prison Terms, following a March 6, 2002 parole consideration hearing, that he was not suitable for parole. Based on a thorough review of the record and applicable law, it is recommended that the petition be denied.

## II. BACKGROUND

Petitioner's life crime was described as follows in a June 7, 1999 psychological evaluation considered by the Board at the March 6, 2002 parole suitability hearing:

> On [March 21, 1981,] the inmate arrived at the scene of the crime to pick up his "girlfriend/prostitute" who was in the process of arranging her last "trick" of the day. The victim reportedly verbally insulted her. The inmate intervened, a verbal confrontation ensued, and the inmate reported that he turned to walk away. He reported that he then believed that the victim pursued him. He then turned and fired twice with a .25 handgun, striking the victim both times and killing him.

Petitioner was convicted by jury of second degree murder and sentenced to a term of 15 years to life in state prison. His minimum eligible parole date passed on March 1, 1989. On March 6, 2002, a panel of the Board of Prison Terms conducted a hearing to determine petitioner's suitability for parole and concluded that he would pose an unreasonable risk of danger to society or a threat to public safety if released, and thus that he was not suitable for parole.

Petitioner challenged the Board's decision in an administrative appeal, which was denied on February 11, 2003. Petitioner also filed a petition for writ of habeas corpus to the Solano County Superior Court. The Solano County Superior Court denied the petition in a written decision dated November 5, 2003. Petitioner also sought relief in the California Court of Appeal and the California Supreme Court; those petitions were likewise denied.

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## IV.  CLAIMS FOR REVIEW

In the pending petition, petitioner claims that (A) the Board's denial of parole violated his right to due process of law because his commitment offense was not particularly egregious and because there was no other evidence of current dangerousness; and (B) the Board's refusal to grant parole violated California state law.

## V.  EXHAUSTION

Before proceeding with a federal habeas corpus petition, a state prisoner must first exhaust state court remedies.  28 U.S.C. § 2254(b); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995).  Exhaustion requires that the federal claim be fairly presented to the state's highest court to which appeal is available.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-47 (1999).

In this case, petitioner's pro se habeas corpus petition to the California Supreme Court was denied on March 23, 2005 with a citation to *People v. Duvall*, 9 Cal.4th 464, 474 (1995) and no additional explanation.  Respondent contends that the California Supreme Court's denial of the petition with citation to *Duvall* demonstrates that the petition was procedurally defective, and thus, that the exhaustion requirement was not satisfied.

In *Duvall*, at the cited page, the California Supreme Court held that a habeas corpus petitioner must "state fully and with particularity the facts on which relief is sought," and must also "include copies of reasonably available documentary evidence supporting the claim." 9 Cal.4th at 474.  Thus, petitioner's filing to the California Supreme Court was procedurally

3

deficient. Claims denied as procedurally deficient are not per se exhausted. *See Harris v. Superior Court of State of Cal., Los Angeles County*, 500 F.2d 1124 (9th Cir. 1974) (en banc); *Kim v. Villalobos*, 799 F.2d 1317, 1319-20 (9th Cir. 1986). Thus the California Supreme Court's citation to *Duvall* does not end this court's inquiry.

Where a prisoner proceeding pro se is unable to meet the state rule that his claims be pleaded with particularity, he may be excused from complying with the exhaustion rule. *Harmon v. Ryan*, 959 F.2d 1457, 1462 (9th Cir. 1992) (citing *Kim*, 799 F.2d at 1321). "It is... incumbent upon [the federal court presented with the petition], in determining whether the federal standard of 'fair presentation' of a claim to the state courts has been met," to independently review a petition for sufficient particularity. *Kim*, 799 F.2d at 1320 (9th Cir. 1986). "Fair presentation" to the state's highest court requires only that the claims be pleaded with as much particularity as is practicable. *Kim*, 799 F.2d at 1320.

In this case, the relevant petition filed to the California Supreme Court is not before this court in order for a determination to be made whether petitioner's claims were fairly presented. Nevertheless, it will be recommended that habeas corpus relief be denied on the merits, because it is clear that petitioner's claims are not colorable. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

VI.   DISCUSSION

A.   Due Process

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or

4

property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create for prisoners a protected liberty interest in the receipt of a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Where a state's statutory parole scheme uses mandatory language, however, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made," thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

In California, Penal Code section 3041 sets forth the state's legislative standards for determining parole for life-sentenced prisoners such as petitioner. Subsection (a) provides that "[o]ne year prior to the inmate's minimum eligible parole release date a panel... shall meet with the inmate and shall normally set a parole release date." Cal Penal Code §3041(a). Subsection (b) provides an exception to the regular and early setting of a lifer's term, if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..." Cal. Penal Code §3041(b). California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*,

825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

Additionally, as a matter of *state* law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The federal Due Process Clause requires that California comply with its own "some evidence" requirement. *See Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). Thus, a reviewing court such as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 562-63.

The analysis of whether some evidence supports the denial of parole to a California state inmate is framed by the state's statutes and regulations governing parole suitability determinations. *See Irons*, 505 F.3d at 851. This court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Id*.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is

6

suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008). The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. §2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

In this case, at petitioner's March 6, 2002 parole suitability hearing, a panel of the Board indicated that it considered both positive and negative factors bearing on petitioner's suitability for parole, but ultimately concluded that he was not suitable at that time:

> Number one was the timing and gravity of the commitment offense, which was a violent attack on a victim, an unarmed victim in this particular case. This comes from the Statement of Facts in which Mr. Adkins was armed with a .25 caliber automatic and the victim in this particular case was in a confrontation with Mr. Adkin's female associate who was involved in prostitution activity and Mr. Adkins, by his own admission, was involved in pimping activities. He interceded in this dispute and shot the victim, resulting in the victim's death. Regarding his previous record, he had no prior convictions prior to his life offense. He had worked in a number of occupations over the years prior to his incarceration. His institutional behavior, there was a little bit of a mixed bag here and that does cause the Board some concern. He's

| | |
|---|---|
| 1 | had some counseling chronos since his last appearance and then in '98, the year prior to that, he had several 115s for violations of |
| 2 | various rules, one for theft, one for refusing to work and one for grooming.  He came in with some education, into the institution. |
| 3 | He had a high school diploma and some college units.  He has been doing okay in his work assignment.  Psychological evaluation by, |
| 4 | the last one anyway, completed by Dr. Pittovino on 6/7 of '99 does point out some areas remaining of concern.  Although he does |
| 5 | write that he presently appears to present a less than average potential for danger given the general prison population.  He goes |
| 6 | [on] to say that he presents as arrogant and in a self-righteous and condescending manner.  He tends to alienate others with his sense |
| 7 | of superiority... So [the evaluator] wasn't completely sold on Mr. Adkins' preparation for parole, although he'd had more supportive |
| 8 | comments made previously in his other evaluations.  His parole plans, he does need to work on firming up some of those plans. |
| 9 | We did look at the information that you had here in the file there, Mr. Adkins, but you need to get some correspondence back and |
| 10 | forth so that we have something in the file to hang our hat on and a letter from -- a current letter each time you come in front of the |
| 11 | Board from any support people that you have, including your niece... Our recommendations are going to be that he just remain |
| 12 | disciplinary free and participate in self-help activities.  You've been in prison a long time, Mr. Adkins, you can't afford to get |
| 13 | 128s and 115s and things like that because I know you want to go home.  You want to get paroled.  There's no reason to get these |
| 14 | things and you've got to put some time between yourself and these disciplinaries, but you're only hurting yourself when that happens. |
| 15 | I mean it's really up to you whether or not you get a parole date. |

16   (Pet. Ex. B at 39-41.)  Thus, it appears that the Board relied on the following factors in support of

17   it's conclusion that petitioner was not suitable for parole: (1) the circumstances of his

18   commitment offense; (2) his institutional behavior; (3) his parole plans or lack thereof; and (4)

19   his most recent psychological report.

20              Under the applicable state regulations, the circumstances of a prisoner's

21   commitment offense tend to show unsuitability for parole for where the offense was committed

22   "in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. §2402(c)(1).  Factors

23   that will support such a finding include (A) where multiple victims were attacked, injured or

24   killed; (B) where the offense was carried out in a dispassionate and calculated manner, such as an

25   execution-style murder; (C) where the victim was abused, defiled or mutilated; (D) where the

26   offense was carried out in a manner which demonstrates an exceptionally callous disregard for

8

human suffering; and where (E) the motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs. tit. 15 §2402 (c)(1)(A)- (E).  The relevant inquiry for the Board is an individualized one: "whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." *In re Lawrence*, 44 Cal.4th at 1221.  The passage of time and attendant changes in the inmate's psychological or mental attitude are relevant considerations.  *Id*.

In this case, the Board did not specify exactly how the "timing and gravity" of petitioner's offense was particularly relevant to a determination of his suitability for parole at the time of the hearing.  Petitioner's offense does not fit any of the specific regulatory factors which demonstrate that an offense was especially heinous, atrocious, or cruel such that it tends to show an inmate's unsuitability for parole.  The fact that petitioner's offense was "violent," as the Board noted, hardly suffices since all second degree murders are, by definition, violent.  The Board further noted that petitioner's victim was unarmed, however, given the passage of time since the offense, that fact does not, by itself, demonstrate petitioner's unsuitability.

The murder petitioner committed was a grave and serious crime deserving of the prison sentence imposed on him.  But, petitioner committed this murder more than 20 years prior to the 2002 parole suitability determination at issue, and it constitutes the only conviction in his record as well as his only known episode of violence.  In light of these facts, the Board failed to demonstrate that the circumstances of petitioner's offense remained probative to an assessment of his current dangerousness at the time of the hearing.  In this case, the timing and gravity of petitioner's offense do not support, on their own, the denial of parole.

Nevertheless, the Board relied on additional factors to support its ultimate conclusion that petitioner still posed a risk of danger or threat to the public at the time of his hearing in 2002.  These other factors independently constitute some evidence in the record to support the Board's conclusion that petitioner was not suitable for parole.

The Board expressed concern about petitioner's institutional behavior, which it characterized as "a little bit of a mixed bag."  The Board was authorized to consider petitioner's institutional behavior as a factor demonstrating parole suitability or unsuitability.  15 Cal. Code Regs. §2281 (c)6), (d)(9).  The Board noted that at petitioner's previous parole suitability hearing, he was asked to become disciplinary free, upgrade vocationally, and participate in self-help or therapy programs.  Petitioner succeeded in receiving no disciplinary reports during the time since his last parole suitability hearing although it was noted that he failed to upgrade vocationally or participate in any self-help or therapy programs during that time.

Petitioner argues that his disciplinary history was no longer probative to an assessment of his dangerousness at the time of the 2002 hearing.  But petitioner had received several disciplinary reports (CDC 115s) as recently as 1998 for violating rules, theft, refusing to work, and a grooming violation.  Since his previous parole suitability hearing in 1999, petitioner had not received any additional CDC 115s but had been counseled for less serious violations (as evidenced by his receipt of CDC 128 "counseling chronos"), including refusing to work and disobeying a direct order, among others.  None of the incidents petitioner was recently counseled for involved violence, and he offered very reasonable mitigating explanations for some of them.  Nevertheless, disobeying rules or orders as an inmate necessarily poses a risk of threat to institutional safety and security regardless of the inmate's motives or intentions at the time.  In addition, petitioner's 1998 disciplinary reports were still somewhat near in time to his 2002 parole suitability hearing.  Thus, the evidence is not such that a reviewing court such as this one could conclude that petitioner's less than stellar institutional behavior did not hold *any* probative value to a parole suitability determination at the time of the 2002 hearing.

For his parole plans, petitioner planned to be paroled into his niece's custody and then seek placement at one of several Islamic residential programs.  Petitioner presented a list of such facilities to the Board, but had not contacted any of them.  Petitioner stated that he planned to seek a grant or a loan to help him start an art business, and anticipated he would make his

living through his art. Although he planned to reside, at least initially, with his niece, the letter of support on file from her was outdated. Petitioner did not have any current letters of support to present at the 2002 hearing.

A prisoner's understanding and plans for the future tend to indicate suitability for parole, specifically where the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release." Cal. Code Regs. §2402(d)(8). Thus, the existence of realistic parole plans are a parole suitability factor, as opposed to being an unsuitability factor where there are no such plans. Nevertheless, the Board is authorized to consider any information which bears on petitioner's suitability for release. 15 Cal. Code Regs. §2281(b). A complete lack of evidence that petitioner has a place to live, employment opportunities, or any support whatsoever, including emotional support, from friends, family, or other acquaintances bears negatively on a determination of his suitability. Petitioner's failure to demonstrate realistic plans for parole, or at least some serious attempts at making such plans, was appropriately considered by the Board. A conclusion that petitioner presented a risk of danger to society if released because he had no demonstrated plans for the future is not without support in the record.

Finally, the Board appeared to place at least some reliance on petitioner's psychological report, which was less than completely favorable. In the most recent psychological evaluation available to the Board, dated June 7, 1999, the evaluator indicated that it was "difficult to assess [petitioner's] ability to conform and comply with societal norms" given that he has been under the supervision and structure of the prison system for so long. The evaluator concluded that petitioner appeared to present a less than average potential for danger compared to the general prison population. The evaluator also indicated, however, that petitioner had presented himself for the interview in somewhat of an "arrogant and self-righteous, condescending manner." The evaluator gave petitioner only a "guarded to fair" prognosis for future community living.

On this record, there is some evidence to support the Board's conclusion that petitioner was not suitable for parole at the time of his March 6, 2002 suitability hearing. Circumstances relating to petitioner's institutional behavior, failure to demonstrate realistic parole plans, and less than favorable psychological report provide the required modicum of evidence to support the Board's 2002 denial of parole. The Board's decision withstands the minimally stringent "some evidence" test and has not violated petitioner's right to due process of law.

### B.  State Law Claims

Petitioner additionally claims that the Board violated state law by refusing to apply California's sentencing matrix to his sentence, and also by exceeding its statutory grant of authority. These contentions relate to issues of state law which will not be reviewed here. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Alleged errors in the application of state law are generally not cognizable on federal habeas corpus. *See Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (A petitioner "may not transform a state-law issue into a federal one merely by asserting a violation of due process. We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus") (internal citation omitted). Thus, petitioner is not entitled to relief for any of his claims.

### VII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 28, 2010

/s/ Charlene H. Sorrentino
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE